# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | Case No.  1:22-cr-00374-DLF-1 |
| | : | |
| Lilith Anton Saer | : | Hon. Judge Dabney L. Friedrich |
| *Defendant*. | : | |
| | : | |

## DEFENDANT'S MEMORANDUM IN AID OF SENTENCING AND ASSESSMENT OF 18 U.S.C. § 3553(a) SENTENCING FACTORS

COMES NOW, Lilith Saer, by and through counsel, and provides the Court with her position regarding the application of the sentencing factors to the Court's obligation to impose a sentence "sufficient, but not greater than necessary to comply" with the factors found in 18 U.S.C. § 3553(a).  Ms. Saer, with a clean record and after accepting responsibility for her actions, requests probation as the appropriate penalty for her first offense misdemeanor conviction under 40 U.S.C. § 5104(e)(2)(G), Parading, Demonstrating, or Picketing in a Capitol Building.

Pursuant to USSG § 1B1.9, the U.S. Sentencing Guidelines do not apply to any count of conviction that is a Class B misdemeanor. Because there are no relevant sentencing guidelines for the Court to follow, it is even more important for the Court to weigh Ms. Saer's actions both on January 6th to determine a fair and individualized sentence under 18 U.S.C. § 3553(a).

Ms. Saer traveled to Washington D.C. from Portland, Oregon. She wanted to hear the then-President speak at his rally. She travelled alone and attended the rally alone. She was simply there to show support for her candidate of choice and to hear him speak in person for the first time. Ms. Saer first found out about the rally from YouTube commentators. She did not plan

for violence or insurrection. She did not come prepared with any weapons, pepper sprays, flagpoles, or bats. She did not join in with a group to wreak havoc on the Capitol.

Ms. Saer attended the rally at the monument and that is when she first found out about the march to the Capitol. She went along with the large group of people that walked over leisurely. She got to the Capitol around 3 pm. She followed a group of people entering the Senate Wing Door inside the Capitol. She then walked through the Crypt and Hall of Columns. She is seen on camera interacting with someone who informs her that she is not allowed to be in the building and she immediately exits. She is in the Capitol for a total of six minutes. She does not touch anything, does not assault anyone, nor does she vandalize the building. Aside from being inside and on Capitol grounds, she does not commit any other criminal acts while inside the Capitol or on Capitol grounds.

Ms. Saer is brutally aware of the seriousness of her conduct on January 6, 2021, and that of the larger collective who gathered in violent protest that day.  She has taken and continues to take full accountability and responsibility for her actions. As a result of her actions on January 6th, Ms. Saer believes a sentence of probation and restitution is appropriate and respectfully requests the Court to impose such a sentence.

### Background

On January 18, 2023, Ms. Saer pleaded guilty to a single count of Parading, Demonstrating or Picking in a Capitol Building, a violation of Title 40, United States Code, Section 5104(e)(2)(G).

Ms. Saer did not come to Washington D.C. to incite violence. She did come prepared with firearms nor did she have plans to stop the election. At no point on January 6th does Ms.

Saer incite violence, take part in violence, or seem to enjoy the violence. She does not assault law enforcement, steal memorabilia, or disrupt anything inside the Capitol.

Ms. Saer flew from Oregon to attend the rally and to hear the President speak. She did not come to stop the electoral college nor did she have any idea that the counting of the votes was occurring that day. In all of the traces of Ms. Saer in and around the Capitol, she can be seen alone, walking with the crowd, not chanting, not inciting violence, and not being aggressive.

As demonstrated in the attached letter from her longtime friend, Ms. Saer's character will ensure that she fulfills the obligations that the Court imposes on her.  This commitment should be both encouraged and fostered through a sentence that appropriately balances punishment, deterrence, and rehabilitation.

## Argument

### A.    The Court shall impose a sentence sufficient, but not greater than necessary, to comply with 18 U.S.C. § 3553(a).

"The court shall impose a sentence sufficient, but not greater than necessary, to comply with" 18 U.S.C. § 3553(a)'s mandates.  These include considering the "nature and circumstances of the offense and the history and characteristics of the defendant," reflecting the seriousness of the offense, affording adequate deterrence, protecting the public, and providing necessary rehabilitation to the defendant.  18 U.S.C. § 3553(a)(1-2).

In *United States v. Booker*, 125 S.Ct. 738 (2005), the United States Supreme Court restored to sentencing judges the power to use discretion in determining appropriate sentences. "In the wake of *Booker*, therefore, the discretion of a sentencing court is no longer bound by the range prescribed by the sentencing guidelines.  Nevertheless, a sentencing court is still required to 'consult [the] guidelines and take them into account when sentencing.'"  *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005) (quoting *Booker*, 125 S.Ct. at 767).  In light of

*Booker*, "a district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in § 3553(a) before imposing the sentence." *Id.* (citation omitted).

**B.    18 U.S.C. § 3553(a) Factors to Consider in Sentencing.**

**1.    Nature and Circumstances of the Offense.**

Ms. Saer pleaded guilty to a single count of Parading, Demonstrating or Picking in a Capitol Building, a violation of Title 40, United States Code, Section 5104(e)(2)(G). Ms. Saer arrived in Washington D.C. to attend the rally and show her support for her candidate—President Trump. She came without association to any groups, did not carry firearms, tactical gear, or anything that can be used a weapon. She did not come prepared or looking for violence that day.

It was during the speech where she heard President Trump first mention the march to the Capitol. Not being from D.C., she followed the rest of the crowd to the Capitol. She leisurely follows the crowd, again with no urgency to get to the Capitol, as she had no specific plans to be there. She gets there around 10 minutes later and by this point, all barricades have been breached. She does not witness any barricades being torn down nor is she part of the crowd that makes the first push into the Capitol. She sees people walking up the steps to the Capitol and she follows them. On her way up, she sees guards and officers who do not stop the crowds. She sees guards standing by certain entrances and she does not go into those entrances, thinking only those were off limits. Once inside, she takes photos, walks through, and generally stays within the cordoned off pathway. She passes officers who don't direct her to leave the building. Around 3:02, she comes across someone who informs her that she isn't allowed inside. This isn't an officer, just another rally attendee. She, along with others, can be seen exiting the Capitol immediately.







2.     __History and Characteristics of the Defendant__.

Ms. Saer is a 31-year-old from Portland, Oregon. She was arrested and released on charges on July 8, 2022. She remained on a personal recognizance bond with pretrial supervision till date and has successfully complied with all conditions of this Court for almost a year.

Ms. Saer was born to Timothy and Susan Coutu. Ms. Saer was born as Ian Anton Coutu. Ms. Saer suffered gender dysphoria and depression and eventually transitioned and legally changed her name to Lilith Anton Saer five years ago. Ms. Saer's father passed away when she was 14-years-old which was a formative time for Ms. Saer. She was closer to her father than her mother but grew up only seeing him weekly until he passed away. Soon, Ms. Saer's mother's boyfriend moved in to their home and was verbally and physically abusive to Ms. Saer's mom as well as the children. She also reports that CPS was called to their home and her brother ran away from home as a child as a result of the friction in the house. Currently, Ms. Saer does not

6

maintain contact with her family members. Throughout the pendency of this litigation, Ms. Saer had remained employed until very recently. She has recently lost her employment.

After moving away from her family, Ms. Saer has created her own community. She has built a life for herself, bought her own home, and has found a close-knit community. The letter from Solomon Gonzalez demonstrates Ms. Saer's character, her involvement in the community, and her acceptance of responsibility as those close to her are well aware of her actions on January 6th. Mr. Gonzalez is not blinded by his love for Ms. Saer. Instead, he is soberly aware of the consequences of her actions and is aware of her true remorse.

Exhibit 1, Solomon Gonzalez Letter.

Mr. Gonzalez writes of Lilith's character:

As someone who has known Lilith for a significant period of time (7 years), I can confidently say that she is a person of exceptional character, integrity, and values. She is honest, trustworthy, and reliable, and she is always willing to go above and beyond to help those around her. Lilith is kind, compassionate, and supportive to the people she chooses to associate with. She has a deep capacity for empathy and understanding, and she is always willing to lend an ear or helping hand to those in need.

Ms. Gonzalez writes of the support he is able to provide for Lilith:

As someone who cares deeply about Lilith, I am committed to providing her with the support she needs to get through this difficult period. My sole aim is to provide Lilith with the support she needs to stay positive and focused, and to continue to work towards a positive outcome.

During the pendency of this proceeding, Ms. Saer has relied on her faith and her chosen family.  She needs them and they need her.  They are aware of the severity of this offense.  They will support her and ensure that she refrains from any future criminal conduct.  Mr. Gonzalez's letter speaks not only of her rehabilitation, but also to the supportive and faithful network upon which Ms. Saer can lean on, which further supports future deterrence.

**3.**     **The Need for the Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense.**

The nature and circumstances of the offense and of Ms. Saer must be balanced with imposing a sentence that reflects the seriousness of this offense, respects the rule of law, and provides a just punishment.  Ms. Saer understands the seriousness of this charge and, indeed, the entirety of what occurred on January 6, 2021.  That is why she took responsibility for his actions, and pleaded to this offense and has accepted the recommendation made by the Probation Office for restitution despite committing no acts of destruction or vandalism himself.

Ms. Saer takes full responsibility for her actions and her role in the larger collective of that day.  She has spent every day since January 6 reliving that day, and she faces the constant reminder of her wrongdoing.  Likewise, she suffers from the seriousness of her offense every day, whether with having to face friends and family members, the indelible shame this has brought upon her otherwise law-abiding life, or living in the uncertainty of losing everything she has worked for over the last two years. Every future job application will require the disclosure of her crime and she will forever live with the ignominy of her actions. She has lost her job while this sentencing was pending and will not have to work even harder to secure her next position.

As serious as Ms. Saer's actions were, they must be viewed in context when considering sentencing.  Unlike others, Ms. Saer did not bring any weapons with her to the rally.  Nor did she bring any items that suggested she anticipated what ended up occurring.  She did not bring body armor or a helmet.  She did not bring a radio or a gas mask.  In fact, she did not even bring any political apparel.  She did not boast about

entering the Capitol and she did not remain defiant following January 6—as many have done.

### To Afford Adequate Deterrence to Criminal Conduct.

Ms. Saer has been adequately deterred and is not likely to engage in future criminal conduct.  She has no criminal record, so this misdemeanor conviction serves as a greater punishment and deterrence than it may for someone with an extensive record.  She will now live with its consequences daily, bother personally and professionally.

She is certain to face consequences far beyond what he would have previously imagined.  She faces harassment and embarrassment, and her future prospects will be more limited.  This will harm her financially, but also emotionally as she knows he will not be able to support her family in the same way.  She accepts this reality, and she understands that real consequences are just and appropriate, but she is deterred before she even arrives at sentencing.

Her family faces constant harassment, her name is forever associated with her actions on the internet and she will always be branded by her offense that day.  She accepts this reality, and she understands that real consequences are just and appropriate.

After sentencing, she intends to return to her law-abiding life by continuing her search for gainful employment and continuing her work in the community and her involvement in her church.  These are goals that the principles of sentencing should foster.

### To Protect the Public from Further Crimes of the Defendant.

Ms. Saer is not a danger to the community.  Ms. Saer's clean record prior to this conviction and her entirely compliant behavior on pretrial supervision suggests that she is well-equipped to follow the Court's orders and maintain a law-abiding life. By all accounts from

friends, Ms. Saer is unlikely to follow down a path of criminality. Ms. Saer is a not a dangerous individual or poses any threat to the public.

**C.**     **The Sentencing Guidelines and Probation Office Recommendation.**

Pursuant to USSG § 1B1.9, the U.S. Sentencing Guidelines do not apply to any count of conviction that is a Class B misdemeanor. The United States Probation Office has made their sentencing recommendation to the Court and recommends the following: 36 months of probation and restitution of $500. The United States Probation Office does not recommend incarceration. Their recommendation is made due to minimal culpability as compared to others who were present on January 6th. Probation does not believe Ms. Saer to be a present danger to society and the goals of sentencing can be accomplished through a non-custodial sentence. They additionally are not concerned about Ms. Saer's rehabilitation.

In light of her role in the offense, her history and characteristics, and the need to impose an appropriate sentence, Ms. Saer requests the Probation Office's sentencing recommendation as an appropriate sentence to reflect the needs of sentencing.

<u>Conclusion</u>

For these reasons, Defendant respectfully requests a period of 36 months of probation along with the restitution outlined in the Probation Office's recommendation.

Respectfully submitted,

Lilith Saer
By Counsel

    /s/
Farheena Siddiqui
D.C. Bar No. 888325080
Law Office of Samuel C.  Moore, PLLC
526 King St., Suite 506

Alexandria, VA 22314
Email: fsiddiqui@scmoorelaw.com
Phone: 703-535-7809
Fax: 571-223-5234
*Counsel for the Defendant*

## EXHIBITS

1.  Letter from Solomon Gonzalez

## CERTIFICATE OF SERVICE

I hereby certify that on the 28 day of March, 2023, I electronically filed the foregoing

with the Clerk of Court Using the CM/ECF system, which will then send a notification of such

filing (NEF) to:

Carolina Nevin
UNITED STATES ATTORNEY'S OFFICE
Criminal Section
601 D Street NW
Washington, DC 20001
202-803-1612
Email: carolina.nevin@usdoj.gov

_____/s/_____
Farheena Siddiqui
D.C. Bar No. 888325080
Law Office of Samuel C.  Moore, PLLC
526 King St., Suite 506
Alexandria, VA 22314
Email: fsiddiqui@scmoorelaw.com
Phone: 703-535-7809
Fax: 571-223-5234

# EXHIBIT 1

## LETTER OF SUPPORT
· Solomon Gonzalez (INTEL Hillsboro) 303-472-2855
**trysolomon@gmail.com · 11865 SW Wilkens Ln, Beaverton, Oregon, 97008**

---

[Law Office of Samuel C. Moore]
[Farheena Siddiqui]
[fsiddiqui@scmoorelaw.com]
[526 King Street, Suite 506]
[Alexandria, VA 22314]

**DEAR HONORABLE JUDGE,**

I am writing to you today to express my support for my friend Lilith and to attest to her good character. As someone who has known Lilith for a significant period of time (7 years), I can confidently say that she is a person of exceptional character, integrity, and values.

Lilith is a person who has always been dedicated to her country, her work, and her community. She is honest, trustworthy, and reliable, and she is always willing to go above and beyond to help those around her.

There are many times when she would encourage me to go to church or invite me over for a meal or Bible studies.  She has been an active member of the Latter-Day Saints, volunteering her time and resources to outreach and ministry. She has a deep commitment to social justice, and has even encouraged me and my friends to vote in the past.

Lilith is kind, compassionate, and supportive to the people she chooses to associate with. She has a deep capacity for empathy and understanding, and she is always willing to lend an ear or helping hand to those in need.

I understand that Lilith is currently facing some difficult circumstances, and I want to assure you that her character and values remain as strong as ever. I have no doubt that she will continue to act with integrity and honor, no matter what challenges she may face.

As someone who cares deeply about Lilith, I am committed to providing her with the support she needs to get through this difficult period. I believe that my presence can help her to stay positive and focused, and to continue to make progress towards her goals.

During the time that I have known Lilith she has never encouraged me to engage in any activities that can be seen as inappropriate or illegal and has always been a voice of reason and encouragement when I have needed advice.

My sole aim is to provide Lilith with the support she needs to stay positive and focused, and to continue to work towards a positive outcome.

In closing, I would like to thank you for your time and consideration. I hope that this letter has helped to provide you with a better understanding of Lilith's character and values, and I urge you to take these factors into account as you make your decision.

Sincerely, Solomon Gonzalez